# United States District Court
## Western District of Virginia
### Harrisonburg Division

|                                              |   |                              |
|----------------------------------------------|---|------------------------------|
| **BEVERLY B. HUFF,**                         | ) | Civil No.: 5:13cv00106       |
|                          *Plaintiff*,        | ) |                              |
| v.                                           | ) | **REPORT AND**               |
|                                              | ) | **RECOMMENDATION**           |
| **CAROLYN W. COLVIN**, Acting                | ) |                              |
| Commissioner of the Social Security          | ) |                              |
| Administration                               | ) |                              |
|                                              | ) | By: Hon. James G. Welsh      |
|                          *Defendant*         | ) |       U. S. Magistrate Judge |

Beverly B. Huff brings this civil action (docket #1) challenging a final decision of the Commissioner of the Social Security Administration ("the agency") denying her applications for a period of disability and disability insurance benefits ("DIB") and for supplemental security income ("SSI") under Titles II and XVI respectively of the Social Security Act, as amended ("the Act"). 42 U.S.C. §§ 416 and 423 and 42 U.S.C. §§ 1381 *et seq*. respectively. Jurisdiction of the court is pursuant to 42 U.S.C. § 405(g).

Along with the Commissioner's Answer (docket #9), she filed a certified copy of the Administrative Record ("R.___") (Docket #11) which includes the evidentiary basis for the findings and conclusions set forth in the Commissioner's final decision. Each party seeks summary judgment (docket #15 and #17) and each has filed a supporting memorandum of points and authorities (docket #16 and #18). Oral argument was requested (*see* docket #16), and the views of the parties were heard telephonically on January 20, 2015. By standing order this case

is before the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

## I.    ADMINISTRATIVE AND PROCEDURAL HISTORY

The record shows that the plaintiff protectively filed her claims for DIB and SSI on January 6, 2011 (R. 17). In her applications she alleges a disability onset date of January 1, 2010 due to the combined effects of "slow learning and [Type] 2 diabetes (R. 62, 74). Both claims were denied initially and on reconsideration, and following an administrative hearing they were denied for a third time by written decision of an administrative law judge ("ALJ") dated August 3, 2012 (R. 86-87, 14-16, 17-31, 35-61). After unsuccessfully seeking Appeals Council review (R. 12-13, 1-5, 31), the unfavorable ALJ decision now stands as the Commissioner's final decision, and this action ensues. *See* 20 C.F.R. § 404.981.

## II. SUMMARY AND RECOMMENDATION

Based on a thorough review of the administrative record and for the reasons herein set forth, it is **RECOMMENDED** that the plaintiff's motion for summary judgment be **DENIED**, the Commissioner's motion for summary judgment be **GRANTED**, an appropriate final judgment be entered **AFFIRMING** the Commissioner's decision denying the plaintiff's DIB and SSI applications, and this matter be **DISMISSED** from the court's active docket.

## III.    STANDARD OF REVIEW

The court's review in this case is limited to determining whether the factual findings of the Commissioner are supported by substantial evidence and whether they were reached through application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2$^d$ 514, 517 (4th Cir. 1987). Substantial evidence has been defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of

evidence but may be somewhat less than a preponderance" of the evidence. *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'" *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) (quoting *Laws*, 368 F.2d at 642). The court is "not at liberty to re-weigh the evidence … or substitute [its] judgment for that of the [ALJ]." *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (internal quotation marks omitted).

## IV. THE ADMINISTRATIVE RECORD

### *Plaintiff's Age, Education, Vocational Experience and Testimony*

At the time the plaintiff alleges her disability began, she was forty-six years of age [1] (R. 62, 102). She has a high school education, but was "in special education throughout" [2] (R. 37). Her past relevant jobs included work as a general office clerk for several businesses in Northern Virginia and work as a kitchen helper for several businesses in the Luray area (R. 57, 39-43, 239). Work as a general office clerk is classified as semi-skilled and exertionally light; work as a kitchen helper is classified as unskilled and exertionally medium (R. 57).

According to the plaintiff, she became unable to work due to a combination of physical and mental conditions: including being "too slow," being overweight and unable to bend or sit on the floor, having arthritic knees and Type 2 diabetes, suffering from anxiety and depression, and being easily confused whenever she feels pressured (R. 43-45, 48-49, 51, 53-54).

She lives alone with her cat; she has "no problem" with routine tasks around her home, and she is fully independent in her self-care (R. 38, 46, 218-227, 232, 410). She is able to drive a

---

[1] At this age the plaintiff is classified as a "younger person," and pursuant to the agency's regulations age is generally considered not to affect seriously a younger person's ability to adjust to other work. 20 C.F.R. §§ 404.1563(c) and 416.927(c).

[2] In her hearing testimony, the plaintiff stated that she was able to read and write and could perform basis math functions (R. 37-38).

3

car; she reads the newspaper daily; she takes medication to control her anxiety, depression, and insulin-dependent diabetes; she uses an inhaler for her asthma (R. 44, 53-54, 233, 237, 409); she is able to walk, and she does not use a cane or other device to assist with ambulation (R. 38, 51, 233, 237, 326, 449). Since May 2009, she has worked in a sheltered workshop facility part-time (about 25-30 hours per week), and she is paid on a piece-work basis pulling size tags off coat hangers and doing light janitorial work (R. 38-39, 229, 239-240). She reports no socialization issues or problems with co-workers, family or neighbors (R. 47-48, 234-235).

*Plaintiff's Medical History*

As the plaintiff testimony suggests, her medical history records a combination of physical and mental health issues that impact her functional abilities. A combined psychological and vocational assessment by Barry Hensley, Ed.D., on April 22, 2009 demonstrated Ms. Huff's "borderline" intellectual development, social and emotional immaturity and a level of intellectual function that would allow no more than unskilled work activity (R. 319-324). At the time of Dr. Hensley's assessment, Ms. Huff described herself as "healthy" with "no significant medical problems" (R. 320).

In 2010, however, she was seen and treated conservatively both by her primary care provider (Cheryl Blanche, DNP) and at Page Memorial Hospital for a number of chronic physical and mental health issues, including Type II diabetes (diagnosed in March 2010), hip pain ("bursitis"), gynecological issues, high cholesterol levels, obesity, morning headaches, and on at least two occasions (in June and again in July) she reported feelings of depression and anxiety, without either suicidal thoughts or sleeping difficulties (R. 328, 347, 362-363, 365, 374, 377-378, 381-382, 386, 390, 400).

4

Ms. Huff's medical records for 2011 document a continuation of essentially the same medical management of her chronic health problems, "that include diabetes, dyslipidemia, obesity, depression, dermatitis" and overactive bladder (R. 326, 327, 354, 356, 360, 421, 423, 429, 437, 449, 468). A radiograph in September at Page Hospital also demonstrated degenerative lumbar disc disease ("probably sciatica") (R. 427, 445-447, 472). She was advised to avoid lifting, pushing, pulling, or sitting for long period, and the emergency room physician prescribed ibuprofen (*Id.*); although a short course of steroids was also recommended, Ms. Huff refused this treatment option (R. 472). When she saw her primary care provider in November, she reported that she was walking 40 to 50 minutes daily and was gradually losing weight (R. 449). Her weight at that time was 272 (down 6 lbs. from September); her body mass index was 45, and no other medically significant issue was noted (*Id.*).

In February 2012, when she was next seen for assessment of her diabetes, her weight was 276, and she reported having failed to "check[] [her] sugars" in nearly three weeks (R. 448). Other than recording a dental health issue, this February 21, 2012 treatment note suggests no other medically significant issue (*Id.*). Similarly, the results of a July 13, 2012, "well woman exam" (following her treatment for strep throat) suggest no disabling medical condition. She was found to be "well appearing, well-nourished [and] in no distress;" she was taking amoxicillin for her sore throat; she was using Motrin as needed for pain, and she expressed concerns only about her depression (R. 501-511).

A consultive psychological examination of the plaintiff by David Leen, Ph.D., in April 2011 demonstrated symptoms consistent with a depressive disorder, a GAF of 59, [3] and a less-

---

[3] The GAF is a numeric scale ranging from zero to one hundred used by mental health clinicians to rate social, occupational and psychological functioning "on a hypothetical continuum of mental health-illness." Diagnostic and Statistical Manual of Mental Disorders, Forth Edition ("DSM-IV"), 32 (American Psychiatric Association, 1994). A specific GAF score represents a clinician's judgment of an individual's overall level of functioning; for example a

than-average level of functioning in the areas of abstract thinking, attention and concentration (R. 409-412). Based on his evaluation, Dr. Leen concluded Ms. Huff could maintain reliable attendance at work, could accept instructions from supervisors, could deal appropriately with co-workers and the public, could complete a normal work-week without interruption, could deal with the usual stressors of competitive work, and was capable of performing relatively simple repetitive work activities in a timely and appropriate manner (*Id.*).

One year later, at her sister's suggestion, Ms. Huff underwent a second psychological evaluation conducted by Kara Devers, a doctoral student at James Madison University ("JMU") (R. 453-466, 486-495). She found the plaintiff to be "experiencing significant psychological distress [at that time] meeting [the] criteria for major depression and generalized anxiety," to exhibit symptoms of an obsessive/compulsive disorder ("OCD"), [4] to exhibit a level of functioning of 50-55 on the GAF scale, to demonstrate borderline intellectual functioning, to have the ability to process simple, abstract concepts, to have a timid nature, a pattern of low self-esteem, and a low capacity for pleasure (R. 461, 493-494).

## V. DISCUSSION

On appeal, the plaintiff asserts that the Commissioner's "conclusion" denying her claims is not supported by substantial evidence (docket #16, pp 3-6). She argues that the "record is replete with medical and psychological evidence" necessary to support a favorable award, and she points specifically to the results of Dr. Hensley's April 2009 psychological, educational and

---

GAF of 41-50 represents serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning); a GAF of 51-60 indicates "moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning), and a GAF of 61-70 indicates "some mild symptoms (e.g., depressed mood and mild insomnia) or some difficulty in social, occupational, or school functioning). *Id*.

[4] OCD is an anxiety-related condition that features obsessive preoccupation and/or repetitive behaviors defined by recurrent and persistent thoughts, urges, impulses, or behaviors. *See* DSM-IV at 456-458.

vocational evaluation (R. 316-324), to the results of the July 2012 psychological evaluation at JMU by Ms. Devers (R. 486-499) and to the summary of six (6) follow-up JMU counseling sessions (R. 512-514). This medical evidence, she further argues, demonstrates ALJ error in three particulars: (1) a failure to include OCD as one of her severe conditions; (2) a failing to conclude her mental health conditions met or equaled listings 12.04 (affective disorders), 12.05 (intellectual disability) and 12.06 (anxiety-related disorders); and (3) a failure to include OCD in his assessment of the severity of her anxiety-related disorder. Separately, she additionally argues that the ALJ's categorization of her participation in a sheltered workshop program as "*a part-time job*" tainted the decision with bias (docket #16, pp 6-7). Each of these contentions is unpersuasive.

A.

In her challenge to the ALJ's and Appeals Council's [5] rejection of the opinions of Ms. Kara Devers and Tim Schulte, Psy.D. (Ms. Devers supervising clinician), the plaintiff argues that the opinions (dated in July and October 2012) of these consultants (R. 453-466, 512-514), along with those of Dr. Hensley from 2009 (R. 319-324), should have been accorded great weight because they are well-supported by the results of detailed assessments.

Because these are opinions of consulting examiners, they must be reviewed in accordance with 20 C.F.R. §§ 404.1527(c) and 416.927(c), but they are not entitled to the greater weight typically afforded to the opinions of treating sources. *Reaves v. Colvin*, 2014 U.S. Dist. LEXIS 100375, *31 (EDVa. July 3, 2014). The factors, therefore, to be considered by the ALJ in assessing such opinions include, but are not limited to: (1) whether the health care provider has examined the claimant; (2) the existence of any treatment relationship between the health care

---

[5] The Appeals Council is required to review additional evidence if it is "(a) new, (b) material, and (c) relates to the period on or before the date of the ALJ's decision." *Wilkins v. Sec'y, Dept. of Health & Human Servs.*, 953 F.2d 93, 95-96 (4th Cir. 1991).

provider and the claimant; (3) the supportability of the provider's opinion, (4) the consistency of the opinion with the record, and (5) whether the provider is a specialist. *Johnson v. Barnhart*, 434 F.3d 650, 654 (4th Cir. 2005) (citing *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001)).

Consistent with this decisional obligation the ALJ reviewed and summarized the evidence, including both the plaintiff's treatment history and the various clinical findings (R. 23-29). He concluded that Ms. Huff's right hip bursitis, osteoarthritis, learning disability, borderline intellectual capacity, affective disorder, generalized anxiety disorder and obesity were all severe impairments "caus[ing] more than minimal work-related limitations" (R. 19-20).

*Inter alia,* in doing so he specifically took into account Dr. Hensley's 2009 assessment in which he reported that Ms. Huff had given no history of serious medical or psychological problems and Dr. Hensley's testing results showings Ms. Huff's "borderline intellectual capacity" but "no emotional or social difficulties" (R. 23-24).

The ALJ, likewise, took note of Ms. Devers' opinion that Ms. Huff exhibited symptoms associated with a number of mental health diagnoses, including OCD, which she opined demonstrated a long history of cognitive impairment, low self-esteem, social/interpersonal limitations and chronic negative emotions (R. 25-26). He gave this opinion, however, "less weight," explaining that Ms. Devers had "observed no serious cognitive, behavioral, intellectual, interpersonal or mental difficulties," that her treatment notes provided "limited support" for her findings, that her opinion appeared to be based primarily on an "adopt[ion]" of the plaintiff's subjective allegation, and that her clinical indications in the summary of signs and limitations did not appear to be consistent with a GAF of 50-55 (R. 29). He also noted the "relatively benign" clinical findings (both before and after the plaintiff's alleged onset date) and the conservative nature of her treatment history (*Id.*).

8

"[T]o the extent there are differences of opinion among the medical sources, the ALJ must explain the basis for adopting one and rejecting another, with reference to the factors governing the evaluation of medical-source opinions set out in 20 C.F.R. §§ [404.1527(c)] and [416.927(c)]." *Reveteriano v. Astrue*, 490 F. App'x 945, 947 (10th Cir. 2012). In the instant case, the ALJ provided sound bases for his assignment of "less weight" to Ms. Devers' opinion. He provided the court with a fully adequate basis for judicial review, and it was supported by substantial evidence.

**B.**

Following the standard five-step analysis prescribed by the Social Security Act, at step-1 the ALJ concluded the plaintiff had demonstrated she was not engaged in "substantial gainful activity" during the decisionally relevant period. 20 C.F.R. §§ 404.1520(b) and 416.920(b). At step-2 he concluded she had shown that she suffered from several physical and several mental impairments (including a learning disability, borderline intellectual capacity, an affective disorder and a generalized anxiety disorder) which "significantly limits … physical or mental ability to do basic work activities." *Id.* (citing 20 C.F.R. §§ 404.1520(c) and 416.920(c)). At step-3 the ALJ found the plaintiff's impairment neither met nor medically equaled any relevant listed impairment (including listings 12.04, 12.05 and 12.06). 20 C.F.R. §§ 404.1520(d) and 416.920(d). Based on his assessment of the record and his reliance on the vocational testimony (R. 55-60), at step-4 the ALJ calculated the plaintiff's residual functional capacity ("RFC"),[6] and relying on the vocational testimony [7] concluded she was unable to perform any past relevant

---

[6] RFC is defined as "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." Social Security Regulation 96-8p,

[7] When a VE is called to testify, the ALJ's function is to pose hypothetical questions that accurately represent the claimant's RFC based on all evidence on record and a fair description of all of the claimant's impairments, so that

9

work (R. 29). 20 C.F.R. §§ 404.1565 and 416.965. And at the fifth and final step, the ALJ determined other work existed in the national economy that the plaintiff could perform, and she was not disabled (R. 30-31). 20 C.F.R. §§ 404.1569(a), 416.969(a), 404.1520(g) and 416.920(g).

Although the plaintiff correctly points-out that Ms. Devers made an OCD diagnosis, the record fails to suggest this condition more than minimally limited the plaintiff's mental ability to do basic work activities. There is no cognizable suggestion the plaintiff's mental health issues have resulted in any inability to function independently outside of the area of the home, any difficulty in public, or any type of social phobia. *See Jackson v. Colvin*, 2015 U.S. Dist. LEXIS 3406, *16 (EDMo. Jan. 15, 2015). Moreover, the record lacks evidence of any functional limitations stemming from her OCD that was more severe than those identified by the ALJ. *See Williams v. Colvin*, 2014 U.S. Dist. LEXIS 15554, *8 (DSC. Feb 7, 2014). It is the plaintiff's burden at step-2 to prove that her OCD is a medically-severe impairment. *See Bowen v. Yuckert*, 482 U.S. 137, 145 n. 5 (1987). Herein, she has failed to meet this evidentiary burden.

Similarly, the plaintiff has failed to meet her burden of establishing a set of disabling impairment-related functional limitations at step-3. Considered both singly and in combination, the ALJ determined the functional criteria ("paragraph B") of listings 12.04, ("paragraph B") of listing 12.06, and ("paragraph D") of listing 12.05 were not satisfied [8] (R. 20). Each requires the plaintiff's impairments to be severe enough to warrant a presumption of disability. *Bryant v.*

---

the vocational expert can offer testimony about any jobs existing in the national economy that the claimant can perform. *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989).

[8] To satisfy the mental criteria of listings 12.04, 12.05 and 12.06 the claimant must demonstrate that her impairment results in at least two of the following: marked restrictions of daily living; or marked difficulties in maintaining social functioning; or marked difficulties in maintaining concentration, persistence or pace; or repeated episodes of decompensation, each of extended duration. 20 C.F.R. pt. 404, subpt. P, appx 1. §§ 12.04(B), 12.05(D) and 12.05(B).

*Colvin*, 571 Fed. Appx. 186, 188 (4th Cir. 2014).  In this case, the ALJ determined that Ms. Huff's evidence did not warrant such a presumption.

As he outlined in considerable detail, she acknowledged performing a variety of regular daily activities, engaging in part-time work-related activities, managing her personal and home care, driving a car, shopping for groceries, taking walks, socializing with family and friends, and a varied level of other activities without significant assistance (R. 20-22).  The ALJ also took notice of her reports of no decompensation episodes, no indications of interpersonal difficulties with authority figures, limited social contacts, large crowd avoidance, and a dislike for changes in her routine.

In his step-3 assessment of the evidence, the ALJ concluded Ms. Huff was moderately restricted in activities of daily living, mildly limited in social functioning, moderate difficulties in the area of concentration, persistence and pace, and no evidence of significant or sustained loss of adaptive functioning (which might suggest the applicability of paragraph C's criteria in 12.04 and 12.06 (R. 20-21).  In addition, he concluded the record contained no evidence of any residual mental disease process (which might also suggest the applicability of paragraph C's criteria), no need for a highly supportive living arrangement, no evidence of a complete inability to function independently outside the home (*see* paragraph A of 12.05) and no evidence of a disabling mental impairment (*see* paragraphs A and B of listing 12.05 (R. 21; *see also* R. 321).  In short, the record simply does not support the plaintiff's claim that the ALJ erred in his evaluation of listings 12.04, 12.05 or 12.06; each was well-supported by substantial evidence, and Ms. Huff failed to meet her burden to prove the contrary.

In making her argument that the ALJ also erred in denying her claims, the plaintiff contends the ALJ in effect *cherry picked* the evidence he used and as a consequence failed to

11

consider properly the JMU reports (docket #16, p 6), when he calculated her RFC at step-4 and made his final determinations that she could not return to any of her previous jobs but could perform jobs available in the national economy.  The record, however demonstrates that the ALJ adequately accounted for Ms. Huff's mental limitations in his RFC, and that substantial evidence supports this determination.

In a nutshell, this argument by the plaintiff is a claim the ALJ erred by disregarding her "[credible] medical evidence" and choosing instead to rely on other credible medical evidence (docket #16, p 6).  The record, however, demonstrates that the findings of each mental health professionals were considered, and the factual bases for their findings were noted (R. 28-29).  Specifically, the ALJ concluded that the functional findings identified by the state agency psychologist were "generally supported by the results of Dr. Hensley's testing, that they were "supported" by Dr. Leen's, consultive examination results, and that the clinical findings (including those of Ms. Devers) "[were] not supportive of disability" (R. 29).

In the instant case, therefore, when factual findings rest upon credibility determinations, "they should be accepted by the reviewing court absent 'exceptional circumstances.'" *Eldeco, Inc. v. NLRB*, 132 F.3d 1007, 1011 (4th Cir. 1997) (quoting *NLRB v. Air Products & Chemicals, Inc.*, 717 F.2d 141, 145 (1951)).  Such "[e]xceptional circumstances include cases where 'a credibility determination is unreasonable, contradicts other findings of fact, or is based on an inadequate reason or no reason at all,'"  *Id*. (quoting *NLRB v. McCullough Environmental Servs., Inc.*, 5 F.3d 923, 928 (5th Cir. 1993)); accord *Bishop v. Comm'r of Soc. Sec.*, 583 F. App'x 65, 68 (4th Cir. 2014).  Where, as in the current case, the ALJ has supported his decision with evidence in the record, it is neither unreasonable nor is it based on inadequate reason.  *Eldeco, Inc.*, 132 F.3d at 1011.

12

Case 5:13-cv-00106-EKD-JGW   Document 23   Filed 02/06/15   Page 12 of 15   Pageid#: 608

## C.

The plaintiff's suggestion of ALJ bias because he "incorrectly classif[ied her] participation in the program at Shen-Paco Industries as a 'part-time job'" is completely lacking in either legal or factual merit. As the Commissioner points-out in her brief, "it is indisputable" that this sheltered workshop job was in fact *part-time* (docket #18 p 12, n. 3); she expressly described it that way both in her testimony and in her function report (R. 38, 229, 234), and in her work history report she reported work less than 40 hours each week (R. 240). The description is neither a pejorative nor does it suggest any bias on the part of the ALJ in his evaluation of the plaintiff's evidence or her credibility. A review of the record shows the ALJ's questions were non-confrontational; they were devoid any suggestion of bias, prejudice, or harassment on the part of the ALJ that would indicate a denial of the plaintiff's entitlement to due process in the hearing. *See e.g. Good v. Astrue*, 2008 U.S. Dist. LEXIS 17976, *12-13 (WDVa. Mar. 7, 2008) (finding that bias must be evident from the record that due process was not afforded, and not based on speculation or inference); *Navistar Int'l Trans. Corp. v. United States E.P.A.*, 941 F.2d 1339, 1360 (6th Cir. 1991) (prejudice by a decision maker must be evident from the record; it may not be based on speculation or inference; the decision-maker is presumed to be unbiased, and this presumption can be overcome only with convincing evidence that "a risk of actual bias or prejudgment" is present).

## D.

The recommendation that the Commissioner's final decision be affirmed should not be read to suggest that Ms. Huff does not have very real and long-standing limitations and health-related issues. The ALJ's non-disability decision, however, is supported by substantial evidence, is free of legal error and is, therefore, conclusive**.**

13

## VI. PROPOSED FINDINGS OF FACT

As supplemented by the above summary and analysis and on the basis of a careful examination of the full administrative record, the undersigned submits the following formal findings, conclusions, and recommendations:

1. The factual findings of the Commissioner are supported by substantial evidence;

2. The factual findings of the Commissioner were reached through application of the correct legal standards;

3. The ALJ adequately explained the basis for his adopting opinions given by Dr. Leen, Dr. Hensley and the state agency psychologist;

4. Substantial evidence supported the ALJ's determination to give "less weight" to the opinion of Ms. Devers and her supervising psychologist;

5. Through the date of the ALJ decision (August 3, 2012): the plaintiff's severe impairments include: right hip trochanteric bursitis; osteoarthritis; learning disability; affective disorder (depression an dysthymic disorder); generalized anxiety disorder; borderline intellectual capacity; and obesity;

6. The plaintiff meets the insured status requirements through March 31, 2013;

7. The plaintiff has not engaged in substantial gainful activity since her alleged onset date (January 1, 2010);

8. Including, but not limited to listings 12.04, 12.05 and 12.06, the plaintiff does not have an impairment, or combination of impairments, that meets or medically equals one of the listed impairments in 20 CFR pt. 404, subpt. P, appx. 1;

9. The Commissioner's residual functional capacity determination is supported by substantial evidence;

10. Through the date of the ALJ's decision, the plaintiff did not have the residual functional capacity to perform her past relevant work;

11. The ALJ fully and fairly assessed the plaintiff's mental health issues;

12. There is no reason to believe that a remand of this case might lead to a different result, *See generally Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989) ("No principle of administrative law or common sense requires us to remand a [Social Security] case in quest of a perfect opinion [from an ALJ] unless there is reason to believe that the remand might lead to a different result.");

14

13. The plaintiff has not met her burden of proving a disabling condition on or before the date of the ALJ's decision; and

14. The final decision of the Commissioner should be affirmed.

## VII. TRANSMITTAL OF THE RECORD

The clerk is directed to transmit the record in this case immediately to the presiding United States district judge and to transmit a copy of this Report and Recommendation to all counsel of record.

## VIII. NOTICE TO THE PARTIES

Both sides are reminded that, pursuant to Rule 72(b) of the Federal Rules of Civil Procedure, they are entitled to note objections, if any they may have, to this Report and Recommendation within fourteen (14) days hereof. **Any adjudication of fact or conclusion of law rendered herein by the undersigned to which an objection is not specifically made within the period prescribed by law may become conclusive upon the parties.** Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1) as to factual recitals or findings as well as to the conclusions reached by the undersigned may be construed by any reviewing court as a waiver of such objections.

**DATED**: This 6th day of February 2015.

*s/ James G. Welsh*
United States Magistrate Judge